UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARROLL SCHUNN, *as personal representative of the estate of R. Paul Schunn, et al.*,<br>    *Plaintiffs*,<br><br>    *vs.*<br><br>GREG ZOELLER, *as Attorney General of the State of Indiana*, *et al.*,<br>    *Defendants*. | 1:11-cv-1705-JMS-DKL |

**ORDER GRANTING MOTION TO DISMISS**

Plaintiffs Carroll Schunn, the personal representative of the estate of R. Paul Schunn, and Katherine Cerajeski, the guardian for Walter Cerajeski,[1] filed this action against Defendants Greg Zoeller, as Attorney General of the State of Indiana, and Richard Mourdock, as Treasurer of the State of Indiana under 42 U.S.C. § 1983, alleging that the Indiana Unclaimed Property Act ("UPA") violates various provisions of the United States Constitution. Presently pending before the Court is Defendants' Motion to Dismiss Plaintiffs' action. [Dkt. 14.]

**I.
STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A motion to dismiss asks whether the complaint "contain[s] sufficient fac-

---

[1] The Court will refer to the Plaintiffs by name as Ms. Schunn and Ms. Cerajeski instead of to the individuals whose property rights they represent.

tual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1951).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (citing *Iqbal*, 129 S.Ct. at 1950).

## II.
### BACKGROUND

### A.  The Indiana Unclaimed Property Act

The Indiana Unclaimed Property Act (the "UPA") provides that various types of property are presumed abandoned if the owner does not make an indication of interest in the property for a certain period of time.  Ind. Code § 32-34-1-20.  For example, property that is held, issued, or owed in the ordinary course of a holder's business is presumed abandoned if the owner has not communicated in writing with the holder concerning the property for one year after the compensation for personal services becomes payable.  I.C. § 32-34-1-20(c).  The amount of time that must pass since the owner has indicated interest varies based on the type of property at issue. I.C. § 32-34-1-20(c) (seven years after the issuance of a money order, three years after the earlier of various dates of dividends or mailings concerning stocks, etc.).

Once the property is presumed abandoned, the entity holding the property must report it to the Indiana Attorney General and provide certain information, including the name of the owner, the last known address of the owner, and the Social Security number of the owner.  I.C. § 32-34-1-26.  The holder of the property must also verify that it sent a written notice about the prop-

erty to the owner of the property no more than 120 days and no less than 60 days prior to the report. I.C. § 32-34-1-26(e).

After the property is remitted to the State, the Attorney General must publish notice that the unclaimed property was delivered to it. I.C. § 32-34-1-28(a). The notice must be published at least once per week for two successive weeks in a newspaper of general circulation in the county of the last address of the owner. *Id.* The advertised notice must contain, among other things, a statement explaining that the property is presumed abandoned and has been taken into protective custody of the Attorney General. I.C. § 32-34-1-28(d).

Under the UPA, the owner of the property is entitled to make a claim for the property and receive any dividends, interest, or other increments realized or accrued on the property at or before its delivery to the Attorney General. I.C. § 32-34-1-30(a). The UPA provides that the owner is not entitled to receive dividends, interest, or other increments accrued after delivery to the Attorney General. I.C. § 32-34-1-30(a).

In *Smythe v. Carter*, the Indiana Court of Appeals affirmed the dismissal of a constitutional challenge to the UPA. 845 N.E.2d 219 (Ind. Ct. App. 2006). Corbin Smythe alleged that the value of his stock in December 2001 when the State took custody was $485.20 and that the State sold the stock in January 2002 for $396.79. *Id.* at 221. In December 2003, Mr. Smythe made a claim for the stock and any accruements and received the amount of the sale of the proceeds ($396.79) plus the dividends that had been earned before the State took custody, for a total of $406.34. *Id.* Mr. Smythe later filed a putative class action alleging that the State took his private property without just compensation in violation of the Indiana and United States Constitu-

tions.[2] *Id.* Mr. Smythe sought a declaration that the applicable portion of the UPA was unconstitutional and also sought injunctive relief to prevent further enforcement of the UPA. *Id.* The Indiana Court of Appeals affirmed the trial court's dismissal of Mr. Smythe's action, concluding that it was Mr. Smythe's failure to act, not the State's exercise of its sovereign power, that caused Mr. Smythe's deprivation. *Id.* at 224. Therefore, the Indiana Court of Appeals concluded that there had not been a taking that required compensation. *Id.* (relying on *Texaco, Inc. v. Short*, 454 U.S. 516 (1982)).

### B. Plaintiffs' Allegations and Relief Sought

Ms. Schunn alleges that 608 shares of stock were delivered to the State pursuant to the UPA and that the State liquidated those shares of stock for $55,860. [Dkt. 1 at 6 ¶ 30.] On March 18, 2012, Ms. Schunn "filed a claim for the return of the estate's unclaimed property" and subsequently received a check for $55,860. [*Id.* at 7 ¶¶ 31-32.] Ms. Schunn alleges that the State did not pay just compensation for use of the stock while it was in the State's possession. [*Id.* at ¶ 34.]

Ms. Cerajeski alleges that on or about September 21, 2006, Mainsource Bank of Hobart delivered certain funds from a bank account to the State. [*Id.* at ¶ 35.] Ms. Cerajeski has not made a claim for the money the State is holding but contends that, upon information and belief, the State "will not pay just compensation for the use of that money during the period of custody" should she make a claim. [*Id.* at ¶¶ 35-36.]

Plaintiffs have sued the Defendants in their official capacities pursuant to 42 U.S.C. § 1983. [Dkt. 1 at 1.] Since Plaintiffs cannot receive money damages against the Defendants in

---

[2] No class was ever certified in *Smythe*, and the State withdrew its *res judicata* and *Rooker-Feldman* doctrine arguments at oral argument. Accordingly, the Court will not address those arguments. [Dkts. 15 at 8-10.]

their official capacities because neither of them is a "person" under § 1983, *Omosegbon v. Wells*, 335 F.3d 668, 672-73 (7th Cir. 2003), Plaintiffs emphasize that they seek "purely prospective" relief and "are not seeking interest earned on their property" but "an order enjoining Defendants to pay just compensation with respect to future claims for their *use* of unclaimed property." [Dkt. 19 at 21, 23, 27 (original emphasis).] Plaintiffs further emphasize that they "do not seek an order preventing future 'takings'" but contend that they want "an order requiring Defendants to pay such just compensation on a going-forward basis." [Dkt. 19 at 27.]

## III.
### DISCUSSION

Plaintiffs make a procedural due process challenge, a substantive due process challenge, and a Takings Clause challenge to the UPA. [Dkt. 1.] Before evaluating the merits of the Plaintiffs' claims in the context of Defendants' motion to dismiss, the Court must address Defendants' argument that Plaintiffs lack standing to pursue this action.

### A.  Standing

In their reply, Defendants challenge Plaintiffs' standing to pursue this action. [Dkt. 23 at 19 n. 15.] Defendants argue that Ms. Schunn lacks standing to pursue her claims because she has already received the proceeds from the sale of the stock and, therefore, cannot benefit from the prospective relief sought in the Complaint. [Dkt. 23 at 19.] Defendants challenge Ms. Cerajeski's standing to pursue this action because "any future harm that she may suffer is caused by her neglect with respect to the bank account." [*Id.*]

While the Court normally considers issues raised for the first time on reply to be waived, standing is a jurisdictional issue that the Court must address. *Hinrichs v. Speaker of House of Representatives of Indiana Gen. Assembly*, 506 F.3d 584, 590 (7th Cir. 2007). Both parties had

the opportunity to present arguments regarding the Plaintiffs' standing (or lack thereof) at an oral argument the Court held on Defendants' motion to dismiss.

A party seeking to invoke federal jurisdiction must demonstrate three things: (1) an injury in fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant and not from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Because standing goes to the jurisdiction of a federal court to hear a particular case, it must exist at the commencement of the suit. *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999). The party "asserting federal jurisdiction" must "carry the burden of establishing [its] standing under Article III." *Hinrichs*, 506 F.3d at 590. When ruling on a motion to dismiss where standing is an issue, the well-pleaded allegations of the complaint must be accepted as true. *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999).

Again, Plaintiffs cannot receive money damages against the Defendants in their official capacities because neither is a "person" under § 1983. *Omosegbon*, 335 F.3d at 672-73. Therefore, Plaintiffs have limited themselves to "purely prospective" relief and are seeking "an order enjoining Defendants to pay just compensation with respect to *future claims* for their use of unclaimed property." [Dkt. 19 at 27 (emphasis added).]

The Court agrees with Defendants that Ms. Schunn lacks standing to pursue this action because the Plaintiffs are seeking prospective relief from which she cannot benefit because she has already claimed her property and received the proceeds of the sale of the stock. In other

words, Ms. Schunn lacks the third element of standing because her alleged injury cannot be redressed by a favorable decision. *Hinrichs*, 506 F.3d at 590. Accordingly, Ms. Schunn's claims against Defendants must be dismissed without prejudice.[3]

The Court agrees with Ms. Cerajeski, however, that she has standing to pursue the prospective relief she seeks in this action. At this stage of the proceedings, even with regard to standing, the Court must accept all well-pleaded allegations of the Complaint as true. *Perry*, 186 F.3d at 829. Ms. Cerajeski alleges that Defendants are holding funds to which she has a claim. [Dkt. 1 at 7 ¶¶ 35-36.] While Ms. Cerajeski has not made a claim for that money, [*id.* at ¶ 36], Defendants do not dispute that the funds would not be returned to her if a claim was made, [dkt. 43 at 19 n.15]. Instead, they limit their argument to the contention that Ms. Cerajeski lacks standing because any future harm she may suffer is caused by her own neglect. [Dkt. 43 at 19 n.15.] That argument goes to the merits of Ms. Cerajeski's claims, not to her standing to pursue the prospective relief she seeks. Therefore, accepting all well-pleaded allegations in the Complaint as true, the Court concludes that Ms. Cerajeski has established the requisite requirements of standing, specifically that there is a likelihood that her injury will be redressed by a favorable decision of this Court should she receive one.

---

[3] "[W]hen a suit is dismissed for want of subject-matter jurisdiction, that is, because the court has no power to resolve the case on the merits even if the parties are content to have it do so, it is error to make the dismissal with prejudice." *T.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997) (citations omitted).

### B. Takings Clause[4]

Ms. Cerajeski tries to distinguish her claim from the claim that was dismissed in *Smythe* by recasting it as an allegedly unlawful use of police power. [Dkt. 19 at 8.] Defendants argue that this recasting of a Takings Clause argument is a distinction without a difference.

The Fifth Amendment to the United States Constitution, which is made applicable to the States by the Fourteenth Amendment, provides, "[N]or shall private property be taken for public use, without just compensation." Ms. Cerajeski's attempt to spin her claim as an allegedly unlawful use of police power ignores that it is beyond dispute that she is still making a takings claim. [*See* dkt. 1 at 7 (alleging violation of Takings Clause).] Ms. Cerajeski also ignores that under well-established law cited by the State in its opening brief, [dkt. 15 at 18], the State's right to appropriate abandoned property is rooted in the common law. *See Conn. Mut. Life Ins. Co. v. Moore*, 333 U.S. 541, 547 (1948) (allowing state to take control of abandoned life insurance money under abandoned property statute in part because "the right of appropriation by the state of abandoned property has existed for centuries in the common law"); *Treasurer of New Jersey v. U.S. Dept. of Treasury*, 684 F.3d 382, 389 (3rd Cir. 2012) (citing *Connecticut Mutual* as support for unclaimed property acts being "rooted in the common-law doctrine of escheat"). Therefore, the Court rejects Ms. Cerajeski's attempt to recast her takings claim.

---

[4] Ms. Cerajeski attempts to bring an independent substantive due process claim. [Dkts. 1 at 7-9; 19 at 10-18.] The Court will not address her substantive due process arguments, however, because as Defendants point out, [dkt. 15 at 12], the United States Supreme Court has held that where a particular amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [the] claims." *Stop the Beach Renourishment, Inc. v. Florida Dept. of Envtl. Prot.*, 130 S. Ct. 2592, 2606 (2010). The Takings Clause provides an explicit textual source of constitutional protection for Ms. Cerajeski's claim; therefore, the Court grants Defendants' motion to dismiss Ms. Cerajeski's substantive due process claim (Count I).

In *Texaco, Inc. v. Short*, the United States Supreme Court addressed the constitutionality of the Indiana Dormant Mineral Interests Act ("DMIA"), which provided that a severed mineral interest not used for a period of 20 years automatically lapsed and reverted to the current surface owner of the property, unless the mineral owner filed a statement of claim in the local county recorder's office. 454 U.S. 516, 518 (1982). Under the statute, various uses were sufficient to preclude the extinction of the mineral interest, such as the production of minerals of the payment of taxes. *Id.* at 519. The statute did not require that any specific notice be given to a mineral owner before the statutory lapse of the mineral estate. *Id.* at 520.

The Supreme Court addressed whether the State had the power to provide that property rights would be extinguished if their owners do not take the affirmative action required by the State. *Id.* at 525. The Supreme Court answered that question affirmatively and noted that historically it had "upheld the power of the State to condition the retention of a property right upon the performance of an act within a limited period of time." *Id.* at 529. It rejected the appellants' argument that the DMIA took private property without just compensation and held that "this Court has never required the State to compensate the owner for the consequences of his own neglect." *Id.* at 530. Specifically, "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.*

Ms. Cerajeski fails to convincingly argue why the Supreme Court's decision in *Texaco* is not persuasive. Numerous courts have relied on *Texaco* when analyzing the constitutionality of unclaimed property statutes and held that they "do not run afoul of the Takings Clause." *See Simon v. Weissmann*, 301 Fed. Appx. 107, 112 (3rd Cir. 2008) (collecting cases and relying on *Texaco* for holding that State has no obligation to pay interest on property that plaintiffs aban-

doned); *see also Turnacliff v. Westly*, 546 F.3d 1113, 1119 (9th Cir. 2008) (relying on *Texaco* for holding that plaintiff had no right to actual or constructive interest earned on property while held by State).  Likewise, this Court concludes that Indiana's UPA does not violate the Takings Clause because it places reasonable conditions[5] on the owner's use of a property right, and any lapse of that right is due to the owner's inaction, not the State's action.  *Texaco*, 454 U.S. at 530. Under those circumstances, there is "no taking that requires compensation" because as the Supreme Court emphasized, "this Court has never required the State to compensate the owner for the consequences of his own neglect."  *Id.*

Because the UPA did not result in a taking of Ms. Cerajeski's property requiring compensation, even construing the allegations in a light most favorable to her, she has not stated a takings claim for relief that is plausible on its face.  Therefore, the Court grants Defendants' motion to dismiss the Count III of Ms. Cerajeski's Complaint.

### C.  Procedural Due Process

Ms. Cerajeski argues that the UPA violates her right to procedural due process because it "orders the automatic, immediate, and irrevocable forfeiture of [the] constitutional right to just compensation, without affording any hearing, either before or after the deprivation."  [Dkt. 19 at 18 (citing dkt. 1 at 10 ¶¶ 51-52).]  Defendants argue that the Ms. Cerajeski has failed to state a claim for relief because the UPA itself provides for adequate notice.  [Dkt. 15 at 13-16.]

"It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property."

---

[5] Under Indiana's UPA, an owner's "indication of interest" in the property is sufficient to prevent the presumption of abandonment and includes among other things, cashing a dividend check, receiving an electronic distribution, depositing or withdrawing from a bank account, paying an insurance premium, or receiving mail correspondence from a financial institution regarding the property.  I.C. § 32-34-1-20(a).  Ms. Cerajeski does not argue that these indications of interest are unreasonable or unduly burdensome, and the Court concludes that they are not.

*Texaco*, 454 U.S. at 532. Although the UPA does not provide for a formal hearing, it is not without its due process safeguards. For example, it requires the holder of the property to verify that it has sent a written notice to the owner of the property before reporting it abandoned to the State. I.C. § 32-34-1-26(e). And after the property is remitted to the State, the Attorney General must publish a notice that the property was delivered to it. I.C. § 32-34-1-28(a). A person who believes that the State is holding his property may file a claim with the Attorney General, I.C. § 32-34-1-36(a), and if he is "aggrieved by a decision," he may file an original action in a court with jurisdiction, I.C. § 32-34-1-38.

The cases Ms. Cerajeski cites for the proposition that she should have received a hearing before the State took possession of her property involve actual takings. [Dkt. 19 at 19 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 181 (1974) (noting that "the opportunity to defend one's property *before it is finally taken* is so basic that it hardly bears repeating") (Kennedy, J., concurring) (emphasis added); *Schluga v. City of Milwaukee*, 101 F.3d 60, 62 (7th Cir. 1996) (noting that as a general matter, an owner is entitled to "'an opportunity to be heard before the property *is taken away for good*'")) (emphasis added).] But as the Court explained at length in the previous section, there has not been a taking of Ms. Cerajeski's property. As she admits in her Complaint, she believes that Defendants will return the principal from the bank account if she makes a claim for it. [Dkt. 1 at 7 ¶ 36.] And she is not entitled to additional compensation because, as the Supreme Court has explained, "this Court has never required the State to compensate the owner for the consequences of his own neglect." *Texaco*, 454 U.S. at 530. Therefore, the cases Ms. Cera-

jeski cites in support of her argument that she should have received a hearing do not support that contention.[6]

Even construing the allegations in a light most favorable to Ms. Cerajeski, the Court concludes that Ms. Cerajeski has not stated a procedural due process claim for relief that is plausible on its face. Therefore, the Court grants Defendants' motion to dismiss Count II of Ms. Cerajeski's Complaint.

## IV.
### CONCLUSION

The Court concludes that Ms. Schunn lacks standing to pursue this action against Defendants and, accordingly, her claims are **DISMISSED WITHOUT PREJUDICE**. For the reasons stated herein, Defendant's Motion to Dismiss, [dkt. 14], is **GRANTED** with respect to Ms. Cerajeski's claims, which are **DISMISSED WITH PREJUDICE**.

11/08/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[6] Likewise, the supplemental, non-binding authority Ms. Cerajeski submitted after oral argument is inapposite. [Dkt. 32.] In *Lavan v. City of Los Angeles*, the Ninth Circuit Court of Appeals affirmed the district court's grant of an injunction in a putative class action challenging the authority of the police to confiscate and immediately destroy, without notice, personal items homeless people momentarily left in public. 693 F.3d 1022 (9th Cir. 2012). *Lavan* did not involve an unclaimed property statute and limited its holding to rejecting the city's request "to declare that the unattended property of homeless persons is uniquely beyond the reach of the Constitution." *Id.* at 1033. Moreover, the City in *Lavan* had no good faith belief that the property at issue had been abandoned. *Id.* at 1025. Given the material differences between *Lavan* and the case at bar, the Court will not discuss this non-binding authority further.

**Distribution via ECF only:**

M. Scott Barrett
BARRETT & ASSOCIATES
barrettecf@aol.com

Adam Clay
INDIANA ATTORNEY GENERAL
Adam.Clay@atg.in.gov

Glenn L. Hara
SUSMAN HEFFNER & HURST LLP
ghara@shhllp.com

Kenneth Lawson Joel
INDIANA ATTORNEY GENERAL
kenneth.joel@atg.in.gov

Frederick William Schultz
GREENE & SCHULTZ
fred@greeneschultz.com

Arthur T. Susman
SUSMAN HEFFNER & HURST LLP
asusman@shhllp.com

John R. Wylie
johnw@dglawfirm.com