UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KATHERINE  CERAJESKI, *Guardian for Walter Cerajeski*, | ) ) ) | |
| *Plaintiff*, | ) ) ) | No. 1:11-cv-01705-JMS-DKL |
| vs. | ) ) | |
| GREG  ZOELLER Attorney General of the State of Indiana, KELLY  MITCHELL Treasurer of the State of Indiana, | ) ) ) ) ) | |
| *Defendants*. | ) ) | |

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Presently pending before the Court is Plaintiff Katherine Cerajeski's Supplemental Motion for Attorneys' Fees. [Filing No. 110.] Ms. Cerajeski requests attorneys' fees pursuant to 42 U.S.C. § 1988, and this request supplements her previously filed First Motion for Attorneys' Fees. [Filing No. 84.]  State Defendants Greg Zoeller, Attorney General of the State of Indiana, and Kelly Mitchell, Treasurer of the State of Indiana (collectively, the "State") oppose Ms. Cerajeski's requests.  [Filing No. 88; Filing No. 114.]  For the reasons that follow, the Court grants in part Ms. Cerajeski's request for attorneys' fees.

**I.**

**GENERALLY APPLICABLE LAW**

42 U.S.C. § 1988(b) provides, in relevant part, that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Typically the district court "is in the best position to make the 'contextual and fact-specific'

assessment of what fees are reasonable."[1] *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). Although the district court's discretion is not boundless, the United States Supreme Court "has said that there is hardly any 'sphere of judicial decisionmaking in which appellate micromanagement has less to recommend.'" *Id.* (quoting *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011)).

The Court "generally begins the fee calculation by computing a 'lodestar': the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Montanez*, 755 F.3d at 553. "Although the lodestar yields a presumptively reasonable fee," the Court may still adjust that fee based on factors not included in the computation. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Ultimately, "the guiding inquiry is whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Montanez*, 755 F.3d at 553 (quoting *Hensley*, 461 U.S. at 434). In calculating the lodestar, the Court "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 131 S. Ct. at 2216. Accordingly, the Court "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

## II.
### RELEVANT BACKGROUND

Addressing Ms. Cerajeski's fee request requires the Court to set forth an abbreviated history of this case. Ms. Cerajeski has pursued this action as the guardian of Walter Cerajeski, seeking relief from what the Seventh Circuit Court of Appeals agreed was an unconstitutional

---

[1] Given that the majority of the fees sought here are for appellate work, in this circumstance the district court may not actually be in the "best position."

taking of the interest the State earned on $10.65 of Ms. Cerajeski's unclaimed property held by the State pursuant to the Indiana Unclaimed Property Act (the "UPA").  *See Cerajeski v. Zoeller*, 735 F.3d 577 (7th. Cir. 2013) ("*Cerajeski I*").  The Seventh Circuit ended *Cerajeski I* by holding that "plaintiff is entitled to just compensation from the state when she files her claim to Cerajeski's account, but the amount of that just compensation has yet to be determined. . . .  The availability and propriety of injunctive relief are other issues to be resolved by the district judge in the first instance."  *Id.* at 583.

On remand, Ms. Cerajeski initially sought leave to amend her complaint to revise certain legal claims and assert a class action.  [Filing No. 60.]  Ms. Cerajeski withdrew that request, however, after Indiana amended its UPA in response to *Cerajeski I*.  [Filing No. 77 at 2.] Specifically, effective July 1, 2014, the UPA's definition of "interest bearing property" was modified and an owner making a claim under the UPA "is now entitled to 'interest that accrues on the property from the date of payment or delivery.'"  [Filing No. 65 at 11 (quoting Ind. Code § 32-34-1-9.1 (2014) and Ind. Code § 32-34-1-30(a) (2014)).]  The State moved to dismiss Ms. Cerajeski's action, contending that Indiana's amendment to the sections of the UPA at issue had mooted Ms. Cerajeski's claim.  [Filing No. 65 at 11.]  Ms. Cerajeski opposed that request, [Filing No. 77], but the Court agreed with the State after concluding that Ms. Cerajeski's claims were moot because she only sought prospective relief for the statutory provisions at issue and those provisions were no longer in effect, [Filing No. 82 at 8].  The Court disagreed with Ms. Cerajeski that dismissing her claim as moot would be tantamount to ignoring the Seventh Circuit's mandate because "the Seventh Circuit did not remand Ms. Cerajeski's case with an order for this Court to immediately enter judgment in her favor."  [Filing No. 82 at 8-9 (quoting *Cerajeski I*, 735 F.3d at 583).]

Per Ms. Cerajeski's request, the Court set a briefing schedule on her request for attorneys' fees.  [Filing No. 82 at 10.]  Ms. Cerajeski's First Motion for Attorneys' Fees requested that the Court award $258,462.50 in fees for appellate counsel's work on *Cerajeski I*.  [Filing No. 85 at 1.] Ms. Cerajeski did not seek any attorneys' fees for time spent litigating the case in the district court proceedings either preceding or following the appeal.  [Filing No. 85 at 1.]  Ms. Cerajeski asked to be compensated for 375.75 hours that her appellate counsel spent on *Cerajeski I*—specifically, 304.25 hours that attorney Terry Saunders spent at a rate of $700 per hour; 48.25 hours that attorney Arthur Susman spent at a rate of $750 per hour; and 23.25 hours of time that attorney Glenn Hara spent at a rate of $400 per hour.  [Filing No. 85-2 at 6; Filing No. 85-2 at 15-21; Filing No. 85-3 at 15; Filing No. 85-3 at 17.]  The State opposed Ms. Cerajeski's request, contending, among other things, that Ms. Cerajeski was not the prevailing party for purposes of 42 U.S.C. § 1988.  [Filing No. 88 at 6-10.]

The Court denied Ms. Cerajeski's first attorneys' fees request.  [Filing No. 90 at 8-12.] Although it recognized that "[i]t is beyond dispute that Ms. Cerajeski received a favorable decision from the Seventh Circuit Court of Appeals," the Court denied the attorneys' fee request because "[that] decision in Ms. Cerajeski's appeal was not sufficiently final to render her the prevailing party for purposes of 42 U.S.C. § 1988."  [Filing No. 90 at 10-11.]

Ms. Cerajeski appealed the Court's denial of her attorneys' fee request, and the Seventh Circuit Court of Appeals reversed this Court's decision.  *See Cerajeski v. Zoeller*, 794 F.3d 828 (7th Cir. 2015) ("*Cerajeski II*").  The Seventh Circuit concluded its decision as follows:

> We therefore reverse the judgment of the district court and remand the case for a determination of the amount of attorneys' fees to which the plaintiff is entitled.  We offer the tentative view that the amount sought—$258,462.50 for 375.75 hours— is excessive, both in the amount of time for which fees are sought and in the average hourly billing rate ($687.86).  Remember that this was just time spent on the appeal (the first, not the present, appeal), and the high average billing rate implies that few

4

junior members of the two law firms who handled the appeal for the plaintiff could have been assigned to work on the appeal. In fact it appears that law-firm partners billed more than 93 percent of the total hours billed.

The plaintiff asks us to determine the amount of attorneys' fees to which she is entitled, but we think it a task better left to the district court. District judges have more experience than appellate judges in determining reasonable awards of attorneys' fees.

*Id.* at 832.

On remand, the assigned magistrate judge held a settlement conference that did not resolve the case and set a briefing schedule for Ms. Cerajeski to supplement her attorneys' fee request. [Filing No. 109.] On November 20, 2015, Ms. Cerajeski filed a Supplemental Motion for Attorneys' Fees, asking the Court to award her $272,550. [Filing No. 110.] Ms. Cerajeski seeks fees for counsel's time spent working on the appeals for *Cerajeski I* and *Cerajeski II*, as well as for time spent working on the second remand. [Filing No. 110 at 1 (supplementing initial fee request at Filing No. 84).] The State opposes Ms. Cerajeski's request for attorneys' fees. [Filing No. 114.] After the motion was fully briefed, the Court ordered the State to file a notice setting forth the aggregate amount of interest paid by the State and the number of claims on which it was paid since the UPA was amended to provide for payment of interest on claimed property. [Filing No. 117 at 1.] The State subsequently filed a Notice stating that since July 1, 2014, the State has paid 5,780 claims with interest and the interest paid on those claims totals $24,400.71. [Filing No. 118.]

### III.
### DISCUSSION

Ms. Cerajeski asks this Court to award her $272,550 in attorneys' fees as the prevailing party in this litigation. [Filing No. 110.] "[M]indful of the Seventh Circuit's 'tentative view' regarding the excessive nature of counsel's rates and time spent on *Cerajeski I*," Ms. Cerajeski's

supplemental fee request "reduces the fee[s] requested in our initial petition for the first appeal and for this supplemental petition to 80 percent" of the hours worked and the hourly rate requested. [Filing No. 111 at 4.]  As support for the reasonable nature of her request, Ms. Cerajeski submits a declaration from Loyola University Chicago School of Law Professor Barry Sullivan, [Filing No. 110-1], and also relies on the declaration of University of Texas School of Law Professor Charles Silver that she submitted with her initial fee request, [Filing No. 85-1].

In response, the State argues that this case is "the type of 'windfall to attorneys' not intended by § 1988." [Filing No. 114 at 1.]  The State emphasizes that this is not a class action and that from the outset, Ms. Cerajeski's attorneys knew that the maximum amount of damages obtainable "was an insignificant amount of interest on a bank account valued at $10.65." [Filing No. 114 at 1-2.]  Given that this "equates to about a 10 cent recovery" and that Ms. Cerajeski "has not even filed a claim for her interest," the State contends that Ms. Cerajeski should not receive any attorneys' fees.  [Filing No. 114 at 5-6 (citing *Farrar v. Hobby*, 506 U.S. 103 (1992)).] Alternatively, the State contends that the requested amount of fees is excessive and that the proposed 20% reduction is insufficient to make them reasonable.  [Filing No. 114 at 9-18.]  The State emphasizes that Ms. Cerajeski only succeeded on one claim on appeal, that counsel has not demonstrated an experience with civil rights litigation to justify their proposed high rates, and that counsel spent an unreasonable amount of hours on this litigation.  [Filing No. 114 at 9-18.]

In reply, Ms. Cerajeski disputes the State's contention that she is not entitled to any fees and contends that it ignores the Seventh Circuit's conclusion in *Cerajeski II*.  [Filing No. 115 at 2.]  Ms. Cerajeski emphasizes her "difficult, complex and risky case with the purpose of effecting a change in what [was] correctly believed to be an unconstitutional provision of state law." [Filing No. 115 at 3.]  She contends that her reduced fee request is not unreasonable in light of the public

goal that was accomplished by the efforts and "the new approach to a complex question of constitutional law—with no precedent to aid them—to . . . have a chance to succeed in the Court of Appeals." [Filing No. 115 at 3.]  Ms. Cerajeski argues that the State does not offer a serious objection to the time spent on *Cerajeski II* or the remand thereafter.  [Filing No. 115 at 7-8.]

### A.  Applicability of *Farrar*

The Court first must address the State's argument that Ms. Cerajeski's victory was purely nominal and, thus, that she is not entitled to any attorneys' fees under § 1988.  [Filing No. 114 at 5-9.]

The State is correct that a party that obtains a purely nominal victory is not entitled to any attorneys' fees.  *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992); *Richardson v. City of Chicago*, 740 F.3d 1099, 1102 (7th Cir. 2014) (summarizing the holding of *Farrar* as "establishing [that] an entitlement to nominal damages does not justify an award of attorneys' fees under § 1988"). *Farrar* directs the Court to consider three factors "in awarding attorney fees to a prevailing party: (1) the difference between the amount of damages sought and the amount actually awarded; (2) the legal significance of the issue being litigated; and (3) the public purpose (if any) of the litigation." *Walker v. City of Chicago*, 513 F. App'x 593, 596 (7th Cir. 2013) (citing *Farrar*, 506 U.S. at 121-22).

The Court is understandably bothered by two things: 1) that the damages at issue in this litigation have always been the amount of interest—approximately $0.10—that the State is retaining on $10.65 of Mr. Cerajeski's money being held by the State pursuant to the UPA; and 2) that Ms. Cerajeski apparently cares so little about Mr. Cerajeski's damages that she has yet to make a claim for his money despite the fact she was certainly entitled to do so when the UPA was amended approximately 18 months ago.  Despite these misgivings, the Court disagrees with the

State that Ms. Cerajeski's victory is purely nominal because it is undisputed that the Indiana legislature amended the UPA in direct response to *Cerajeski I*.  As the Seventh Circuit noted in *Cerajeski II*, Ms. Cerajeski "obtained a judgment which compelled a change in state law that gave her compensation equal to the damages she was seeking, and it was a result brought about by the efforts of her lawyers."[2]  *Cerajeski II*, 794 F.3d at 831.  While the actual effect of her litigation is materially less than Ms. Cerajeski claims,[3] it is not nominal and certainly serves a public purpose, as exhibited by the 5,780 property claims paid with interest since the UPA's amendment.  [Filing No. 118.]  For these reasons, the Court concludes that Ms. Cerajeski is entitled to some attorneys' fees as the prevailing party in this litigation pursuant to § 1988.

### B.  Lodestar Amount

Ms. Cerajeski asks this Court to award her $272,550 in attorneys' fees for the time counsel spent working on the appeals for *Cerajeski I* and *Cerajeski II*, as well as for time spent on the remand to this Court following *Cerajeski II*.  [Filing No. 110 at 1.]  Ms. Cerajeski emphasizes that she is requesting compensation for 80% of her attorneys' actual hours and billable rates to address the Seventh Circuit's "tentative view" in *Cerajeski II* that the rates and hours billed for *Cerajeski I* were "excessive."  [Filing No. 111 at 4 (referencing *Cerajeski*, 794 F.3d at 832).]  The State contends that even with a 20% reduction, the rates and hours billed are still unreasonable and not the actual lodestar amount.  [Filing No. 114 at 9-18.]

---

[2] Given that Ms. Cerajeski obtained what she was seeking, the Court rejects the State's argument that the fee award should be reduced because the Seventh Circuit did not discuss her due process challenge in providing her relief.  [Filing No. 114 at 9-10.]

[3] Ms. Cerajeski estimated that the amendment to the UPA in light of *Cerajeski I* would result in compensation "to claimants over the next ten years [] in the millions of dollars."  [Filing No. 85 at 13.]  In the eighteen months following the amendment, however, the State actually paid $24,400.71 in interest on the claims made.  [Filing No. 118.]  At that rate, it would take approximately 61 years for the State to pay $1,000,000 in interest as a result of the change made to the UPA because of *Cerajeski I*.  The Court cautions counsel to avoid making unsupported representations.

*1) Reasonableness of Hourly Rates*

The Court will first address the reasonableness of Ms. Cerajeski's counsel's requested rates—$700 per hour for Ms. Saunders, $750 per hour for Mr. Susman, and $400 per hour for Mr. Hara.  [Filing No. 85-2 at 6; Filing No. 85-2 at 15-21; Filing No. 85-3 at 15; Filing No. 85-3 at 17.]  In disputing the reasonableness of those rates, the State emphasizes Ms. Cerajeski's counsel's lack of experience with civil rights litigation and argues that an hourly rate around $300 per hour would be more reasonable.  [Filing No. 114 at 11-14.]

a) Ms. Saunders and Mr. Susman

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez*, 755 F.3d at 553 (citation omitted).  "The best evidence of the market rate is the amount the attorney actually bills for similar work." *Id.*  "An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999).

Ms. Saunders and Mr. Susman emphasize that the rates they request were their regular hourly rates in effect at the time that the initial fee petition was filed.  [Filing No. 110-2 (Ms. Saunders' affidavit); Filing No. 110-3 at 3 (Mr. Susman's affidavit).]  They each submit a resume highlighting experience attained during their lengthy legal careers—approximately 40 years for Ms. Saunders and 45 years for Mr. Susman.  [Filing No. 85-2 at 9-12 (Ms. Saunders); Filing No. 85-3 at 10-11 (Mr. Susman).]  While Ms. Saunders and Mr. Susman are undoubtedly experienced litigators, their litigation experience involves securities law, class actions, antitrust law, ERISA law, and complex business litigation.  [Filing No. 85-2 at 9 (Ms. Saunders' biography, noting that she "has concentrated her law practice in the areas of securities, class action, antitrust and other complex business litigation"); Filing No. 85-3 at 10 (Mr. Susman's resume, noting that he is

"published in the securities law field" and "has participated in over 70 lawsuits involving derivative, corporate, and securities matters and Chapter X corporate reorganizations and has achieved a reputation as a specialist in the field of minority shareholder representation").]  What is missing for purposes of establishing that their typical hourly rates should be used for Ms. Cerajeski's case, however, is any relevant appellate, constitutional, and civil rights litigation experience.  The Seventh Circuit recognized this significance in a strikingly similar example:

> Suppose the best lawyer in the United States charges $1,000 an hour and is worth every cent of it.  Only his practice has nothing to do with civil rights; he is, let us say, an antitrust trial lawyer.  He is requested to represent an indigent civil rights plaintiff, and he does so, giving the case his best shot and, despite his inexperience in civil rights litigation, doing a superb job.  Would he be entitled to an award of fees at the rate of $1,000 an hour?  Not if the judge could have procured competent counsel for the plaintiff at a much lower rate.  It is no more reasonable to pay a lawyer $1,000 an hour for services that can be obtained at $200 an hour than it is to pay $1,000 for an automobile hood ornament that you could buy elsewhere for $200.  Judges have to be careful when they are spending other people's money.

*Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996).

Because Ms. Saunders' and Mr. Susman's primary practice areas are not similar to Ms. Cerajeski's appellate constitutional challenge to Indiana's treatment of unclaimed property, their general hourly rates are not "the best evidence" of a reasonable hourly rate for this action.  *See Montanez*, 755 F.3d at 553 ("The best evidence of the market rate is the amount the attorney actually bills *for similar work* . . . .") (emphasis added).  When there is no evidence of what counsel actually billed for similar work, then the Court "may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id.* (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012)).  Ms. Cerajeski argues that a national market is the relevant "community" to consider in the context of her Chicago counsel, despite the fact this litigation challenged the constitutionality an Indiana statute.  [Filing No. 111 at 6 (citing *Jeffboat, LLC. v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487

(7th Cir. 2009)).]  She relies on *Jeffboat*, which is a case where the Seventh Circuit affirmed an ALJ's decision to award plaintiff's counsel his higher, out-of-town rate for litigation conducted in Indiana, despite the fact plaintiff had not first shown he could not retain local counsel.  553 F.3d at 490-91.  Ms. Cerajeski ignores, however, that the Seventh Circuit repeatedly emphasized the ALJ's discretion to determine a reasonable hourly rate, emphasizing that "the judge could adjust an out-of-town attorney's rate downward when calculating the lodestar amount if local counsel could have provided comparably effective legal services and the rate of the out-of-town practitioner was higher than the local market rate [because] the decision to do so was within the discretion of the judge making the award."  *Jeffboat*, 553 F.3d at 490 (citing *Mathur v. Board of Trustees of S. Ill. Univ.*, 317 F.3d 738, 743-44 (7th Cir. 2003)).  Thus, despite Ms. Cerajeski's arguments, *Jeffboat* does not require this Court to automatically accept Ms. Cerajeski's counsel's proposed rates as being on par with an allegedly national market.  In fact, as described more fully below, the Court finds that local counsel could have provided comparably effective—and likely more efficient—legal services at a lower market rate.

Even assuming a national market is at play, Ms. Cerajeski has presented no evidence that her counsel were part of it.  Ms. Cerajeski admits in her reply brief that "[t]he market here is for attorneys with experience and skill in prosecuting complex litigation and constitutional cases at the federal appellate court level in Chicago and other cities throughout the country."  [Filing No. 115 at 5.]  But as the Court has already concluded, Ms. Cerajeski presents no evidence that Ms.

Saunders and Mr. Susman were part of that market, given that there is no evidence that they had any previous experience in federal constitutional appellate law.[4]

The parties' extreme positions leave the Court with little guidance, but all is not lost. "The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate." *Montanez*, 755 F.3d at 553. Given that Ms. Cerajeski has not included evidence supporting the requested rates for her counsel, the Court will turn to the "next best evidence," which may be "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Johnson*, 668 F.3d at 933.

One of the most experienced trial and appellate constitutional civil rights attorneys in Indianapolis is Ken Falk, who is the Legal Director of the American Civil Liberties Union of Indiana ("Indiana ACLU"). Over the past decade, Gavin Rose, a Senior Staff Attorney for the Indiana ACLU, has frequently served as Mr. Falk's co-counsel in these cases. This Court has had much experience with Mr. Falk and Mr. Rose, as have other courts in Indiana. For example, in *Wirtz v. City of South Bend*, Mr. Falk and Mr. Rose represented four individual plaintiffs

---

[4] This conclusion also undercuts the declarations Ms. Cerajeski submits as evidence of rate reasonableness from Loyola University Chicago School of Law Professor Barry Sullivan, [Filing No. 110-1], and University of Texas School of Law Professor Charles Silver, [Filing No. 85-1]. Both professors assumed that Ms. Saunders and Mr. Susman were part of a national market for appellate constitutional legal services, which the Court concludes they are not. Again, while Ms. Saunders and Mr. Susman are undoubtedly experienced litigators in the securities and antitrust context, there is no evidence they had prior experience in constitutional appellate or civil rights litigation. Thus, the Court gives the Sullivan and Silver declarations little weight. *See Pickett v. Sheridan Health Care Ctr.*, --- F.3d ---, 2016 WL 612129, at *3 (7th Cir. Feb. 16, 2016) ("The district court was free to reconsider the affidavits and afford them whatever weight it deemed appropriate. . . . . A district court is entitled to determine the probative value of each evidentiary submission.").

challenging the transfer of a parcel of land by the City of South Bend to a local Catholic Diocese overseeing a private Catholic school, allegedly for below market value. [Cause No. 3:11-cv-325-RLM-CAN, Dkt. 1 (alleging that the city paid $1,200,000 for the property but planned to transfer it for $1.00).] The plaintiffs in *Wirtz* argued that the land transfer violated both the state and federal constitutions and sought an injunction prohibiting the transfer. [Cause No. 3:11-cv-325-RLM-CAN, Dkt. 1.] The district court agreed that the land transfer would violate plaintiffs' rights under the Establishment Clause of the United States Constitution, and it entered an injunction prohibiting the transfer. *Wirtz v. City of S. Bend*, 813 F. Supp. 2d 1051 (N.D. Ind. 2011). Plaintiffs subsequently moved for an award of attorneys' fees pursuant to 42 U.S.C. § 1988, requesting an hourly rate of $400 for Mr. Falk and $275 for Mr. Rose. *Wirtz v. City of S. Bend*, 2012 WL 589454 at *1 (N.D. Ind. 2012). The city did not challenge the reasonableness of Mr. Rose's hourly rate, but it did contend that Mr. Falk's hourly rate of $400 was excessive. *Id.* In ruling on the city's challenge, the district court noted that "Mr. Falk has immense experience in the exact subject matter at hand, the range of local area rates[—$200 to $550—]exceeds what he requests, and [that] he should be near the high side of that range according to his credentials." *Id.* at *2. Thus, the district court concluded that $400 was a reasonable hourly rate for Mr. Falk's work on the case. *Id.*

The Court finds the rates at issue in *Wirtz* to be relevant because, like Ms. Cerajeski's case, *Wirtz* involved a successful constitutional challenge to a government action and a subsequent request that the public entity pay the prevailing plaintiff's attorneys' fees. Comparing counsel, however, it is beyond dispute that Mr. Falk—charging $400 per hour in 2012—had more salient experience than Ms. Saunders or Mr. Susman had when litigating Ms. Cerajeski's case. It is also beyond dispute that Ms. Saunders and Mr. Susman had each been litigators for approximately four

decades, while at the time of the *Wirtz* fee award, Mr. Rose—charging $275 per hour in 2012—had been litigating for approximately six years.  Given that Ms. Saunders and Mr. Susman are no Mr. Falk but that they had decades more litigation experience than Mr. Rose, the Court finds a reasonable hourly rate for Ms. Saunders and Mr. Susman in this litigation to be **$350**.  The Court reached that number by averaging $400 and $275 and adjusting the result slightly upward to account for the rates at issue in *Wirtz* being from 2012 and the work at issue herein occurring after that time.

b) Mr. Hara

Mr. Hara was an associate with Mr. Susman's firm during *Cerajeski I*.[5]  Ms. Cerajeski asserts that a reasonable rate for Mr. Hara is $400.  The parties spend little time focusing on the reasonableness of Mr. Hara's hourly rate, and the Court will follow their lead.  Interestingly, it appears that Mr. Hara actually had the most relevant experience to Ms. Cerajeski's case because he had "litigated a number of class actions on behalf of owners of unclaimed property against state governments."  [Filing No. 85-3 at 8.]  In fact, Mr. Hara had "successfully argued before the Ohio Supreme Court, resulting in a unanimous decision holding that the state's failure to pay interest is unconstitutional."  [Filing No. 85-3 at 8.]

Keeping in mind the Court's prior discussion regarding reasonable rates, the Court notes that Mr. Hara had much less litigation experience than Ms. Saunders and Mr. Susman, but he had three more years of experience than Mr. Rose had in 2012.  Mr. Hara also had particularly relevant experience, given that he had previously successfully challenged at least one state unclaimed property statute.  Thus, the Court finds that a rate higher than Mr. Rose's but lower than Ms.

---

[5] Mr. Hara left Mr. Susman's firm after *Cerajeski I*, and this Court granted his Motion for Leave to Withdraw Appearance in July 2013.  [Filing No. 42.]

Saunders' and Mr. Susman's is appropriate, concluding that a reasonable hourly rate for Mr. Hara is **$300**.

### 2) Reasonableness of Hours Worked

As the party seeking fees, Ms. Cerajeski "bears the burden of proving the reasonableness of the hours worked." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In fact, the Court "has an obligation to exclude from this initial fee calculation hours that were not reasonably expended on the litigation." *Id.*

The parties dispute the reasonableness of the hours Ms. Cerajeski's counsel spent working on the first appeal, the second appeal, and on the second remand. Ms. Cerajeski contends that her counsel spent a reasonable amount of time on each stage of this litigation, but the State disagrees. The State primarily challenges the amount of hours spent on *Cerajeski I*, emphasizing the relatively succinct paper record from the district court and contending that the amount of time counsel spent briefing the appeals and preparing for the oral arguments was excessive. [Filing No. 88 at 11-14; Filing No. 114 at 15-18 (estimating approximate cost per page).] In reply, Ms. Cerajeski defends the number of hours her counsel spent.[6] [Filing No. 89 at 10-13; Filing No. 115 at 6-8.] The Court

---

[6] Ms. Cerajeski cites the declarations of Professors Sullivan and Silver to support the alleged reasonableness of the time her counsel spent on her case, [Filing No. 111 (citing Filing No. 85-1 (Silver declaration) and Filing No. 110-1 (Sullivan declaration)]. Because the Court has already concluded that those professors based their conclusions on the erroneous assumption that Ms. Saunders and Mr. Susman were part of a national market for appellate constitutional legal services, the Court gives little weight to their opinions when analyzing the reasonableness of time spent on this litigation. *See Pickett,* --- F.3d ---, 2016 WL 612129, at *3 ("The district court was free to reconsider the affidavits and afford them whatever weight it deemed appropriate. . . . . A district court is entitled to determine the probative value of each evidentiary submission.").

will address the reasonableness of the number of hours counsel expended on *Cerajeski I*, *Cerajeski II*, and on the second remand, in turn.

a) *Cerajeski I*

In remanding for a fee determination, the Seventh Circuit Court of Appeals offered its "tentative view" that "the amount of time for which fees are sought" for *Cerajeski I* was "excessive." *Cerajeski II*, 794 F.3d at 832. The Court gives weight to this comment, particularly in light of the Seventh Circuit's obvious familiarity with the time it takes to do appellate work, a subject with which this Court—a trial court—has limited experience. *See also Charles v. Daley*, 846 F.2d 1057, 1077 (7th Cir. 1988) ("Aware as we are of the sound rationale for customarily deferring to the fee awards of district courts, such routine deference seems less justified when fees incurred in connection with appellate work, an aspect of legal practice with which *we* are intimately familiar, are in dispute.") (original emphasis). Although Ms. Cerajeski argues that the Seventh Circuit's "tentative view does not withstand closer scrutiny," she nevertheless "reduced the fee requested to 80 percent" of the time expended in response. [Filing No. 111 at 4, 7-10.] But Ms. Cerajeski cites no authority for an across the board percentage reduction being the appropriate remedy, especially for what she concedes are a "number of hours . . . [that] may at first blush appear high." [Filing No. 111 at 3.] The Court will instead analyze the hours spent briefing and preparing for the oral argument in *Cerajeski I* and reduce them as necessary to reflect what it believes to be reasonable.

Ms. Saunders and Mr. Susman spent 352.5 hours total working on *Cerajeski I*. [Filing No. 85-2 at 6.] The State argues in response that 100 to 150 hours would have been reasonable. [Filing No. 114 at 17.] The State emphasizes that *Cerajeski I* was an appeal from this Court's decision to grant a motion to dismiss; thus, it was a paper record with no discovery, depositions, exhibits, or

16

trial transcripts.  [Filing No. 114 at 17.]  The Court finds this observation to be well-taken. Although Ms. Saunders and Mr. Susman were hired as appellate counsel after this Court granted the initial motion to dismiss and understandably spent some time getting up to speed with the case, the Court finds the time it took them to do that, brief the appeal, and prepare for oral argument to be excessive.  This is consistent with the Court's prior observation that Ms. Saunders and Mr. Susman, while experienced litigators in other respects, had little experience with federal constitutional appeals based on the resume evidence they submitted.  While the Court has reduced their requested hourly rates accordingly, it will also keep their lack of experience in mind when determining a reasonable amount of time that counsel should have spent on the various appellate tasks.

Ms. Saunders spent 144.25 hours drafting the opening brief in *Cerajeski I*.  [Filing No. 114 at 15 (State's calculation); Filing No. 115 (not challenged on reply).]  The Court has reviewed the appellate record in *Cerajeski I* and finds that **64 hours**—approximately 1.5 working weeks— would have been a reasonable amount of time for Ms. Saunders to review the district court record, research the relevant issues, and draft the opening brief, especially if she had more heavily relied on Mr. Hara's salient experience on the issues surrounding state unclaimed property statutes.

Ms. Saunders spent 48 hours drafting the reply brief in *Cerajeski I*.  [Filing No. 114 at 15 (State's calculation); Filing No. 115 (not challenged on reply).]  The Court finds that **30 hours** would have been a reasonable amount of time to review the State's appellee's brief and draft a reply.

Ms. Saunders spent 29.5 hours drafting a seven-page supplemental brief about escheat in response to the Seventh Circuit's invitation to the parties to file supplemental memoranda addressing that topic after the oral argument.  [Filing No. 114 at 16 (State's calculation); Filing

No. 115 (not challenged on reply).]  The Court finds that **16 hours** would have been a reasonable amount of time it should have taken counsel to research and brief this supplemental issue on appeal.

Ms. Saunders spent between 60 and 65 hours preparing for and presenting the oral argument in *Cerajeski I*.  [Filing No. 110-1 at 12 (Professor Sullivan's calculation); Filing No. 114 at 15 (State's calculation); Filing No. 115 (not challenged on reply).]  The Court finds this amount of time to be significantly excessive, especially given that Ms. Saunders took the lead drafting both the opening and reply briefs on appeal and, thus, was already well-versed on the relevant issues before oral argument.  *See United States v. Tarkowski*, 2002 WL 460831, at *3 (N.D. Ill. 2002) ("Having researched the factual and legal issues in preparing their brief, there was no need to reinvent the wheel to prepare for argument.").  The Court finds that **20 hours** would have been a reasonable amount of time for Ms. Saunders to prepare for and present oral argument in *Cerajeski I*.  *See, e.g.*, *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988) (determining that "[a]lmost a week's work is far too much for preparing to argue an appeal in a case involving simple facts, a three-day trial, and legal issues of limited (though not trivial) scope and novelty" and, instead, allowing 16 hours for preparation); *Shula v. Lawent*, 2004 WL 2044279, at *2 (N.D. Ill. 2004) (reducing 35 hours requested for Seventh Circuit oral argument to 20); *Johnson v. Prudential Ins. Co. of Am.*, 2000 WL 34229775, at *1 (W.D. Wis. 2000) (reducing 40 hours requested for Seventh Circuit oral argument to 20).

Mr. Susman expended 48.25 total hours assisting Ms. Saunders with *Cerajeski I*.  [Filing No. 85-3 at 6; Filing No. 114 at 15 (State's calculation).]  As the State notes in its response, it is difficult to attribute some of Mr. Susman's time to specific tasks because his time entries are often very general.  [Filing No. 114 at 15 (noting that Mr. Susman's time "could not easily be attributable

18

to specific tasks").] It is clear that Mr. Susman spent 1.25 hours helping Ms. Saunders prepare for oral argument and 4.75 hours attending the oral argument. [Filing No. 85-3 at 14.] The Court finds those 6.0 hours to be a reasonable amount of time spent by co-counsel assisting with oral argument. As for the other 42.25 hours, the Court finds that a reasonable amount of time for Mr. Susman to expend assisting Ms. Saunders with *Cerajeski I* would have been an additional 20 hours. It is clear that Ms. Saunders took the lead and invested the vast majority of the time on Ms. Cerajeski's litigation and that Mr. Hara provided some key assistance on the topics at hand during *Cerajeski I* before leaving Mr. Susman's firm. Thus, from what the Court can discern from Mr. Susman's entries, a reasonable amount of time for him to spend assisting her on *Cerajeski I* would have been **26 hours** total.

The State briefly challenges the reasonableness of the 23.25 hours that Mr. Hara spent working on *Cerajeski I.* [Filing No. 88 at 13.] The Court concludes, however, that given Mr. Hara's prior experience challenging the constitutionality of unclaimed property statutes, he probably should have been *more* involved with *Cerajeski I* to reduce the average billing rate and increase counsel's overall efficiency. *See also Cerajeski II*, 794 F.3d at 832 (commenting with regard to the time requested for *Cerajeski I* that "the high average billing rate [of Ms. Saunders and Mr. Susman] implies that few junior members of the two law firms who handled the appeal could have been assigned to work on the appeal"). Thus, the Court concludes that the **23.25 hours** Mr. Hara spent working on *Cerajeski I* was reasonable.

Based on these conclusions, the Court finds that **179.25 total hours** was a reasonable amount of time for Ms. Cerajeski's counsel to expend on *Cerajeski I.*

b) *Cerajeski II*

Ms. Cerajeski requests attorneys' fees for 82 total hours of work her counsel spent on *Cerajeski II*. [Filing No. 110-2 at 3; Filing No. 111 at 9.] The State disputes the reasonableness of this request but does not specify the amount of time it believes would have been reasonable.[7] [Filing No. 114 at 18-19.] Instead, the State generally criticizes the 45 hours it took counsel to draft the appellant's brief in *Cerajeski II* (noting that at least some of it repeated the history of *Cerajeski I*) as well as 2.5 hours of time that Mr. Susman spent researching issues between the Seventh Circuit oral argument and its decision. [Filing No. 114 at 18.] Ms. Cerajeski characterizes this as "not offer[ing] any serious objection to the time spent on the second appeal" and disputes the State's limited challenge. [Filing No. 115 at 7.]

The Court will only address the reasonableness of the time Ms. Cerajeski's counsel spent on *Cerajeski II* that the State specifically challenged. The Court does not find it unreasonable for counsel to have spent 2.5 hours researching various issues raised at the oral argument. The Court does find the 45 hours spent briefing the appellant's brief to be a bit excessive and concludes, instead, that given counsel's general familiarity with the case after *Cerajeski I*, spending 40 hours doing so would have been reasonable. For these reasons, the Court subtracts 5 hours from counsel's request and finds that **77 total hours** was a reasonable amount of time for Ms. Cerajeski's counsel to expend on *Cerajeski II*.

---

[7] The State calculates Ms. Cerajeski's time spent on *Cerajeski II* to be 90.5 hours but does not cite to the record for that calculation. [Filing No. 114 at 18.] Given that Ms. Cerajeski's opening brief makes clear that her request "is based on 82 hours of work on the second appeal," [Filing No. 111 at 9], the Court will use that number.

c) Second Remand

Ms. Cerajeski requests attorneys' fees for 39.75 hours of work her counsel spent on the second remand.  [Filing No. 111 at 9.]  The State disputes the reasonableness of this request but does not specify the amount of time it believes would have been reasonable.  [Filing No. 114 at 18-19.]  The State claims that the "only matter of substance on remand was a short settlement conference which lasted less than half a day."  [Filing No. 114 at 19.]  Ms. Cerajeski defends her request in reply, noting that the Court ordered the settlement conference and that counsel had to file a settlement brief and travel to Indianapolis to attend the conference.  [Filing No. 115 at 7-8.]  Ms. Cerajeski also points out that the State ignores the time it took counsel to prepare its supplemental fee petition after the settlement conference did not resolve the case.  [Filing No. 115 at 8.]

The Court agrees with Ms. Cerajeski that her counsel spent a reasonable amount of time on the second remand, given the Court-ordered settlement conference and the necessity of a settlement brief and subsequent supplemental fee petition.  Thus, the Court finds that **39.75 total hours** was a reasonable amount of time for Ms. Cerajeski's counsel to spend on the second remand.

### C.  Final Result

As previously stated, the lodestar figure is "the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate."  *Montanez*, 755 F.3d at 553.  The Court has concluded that reasonable hourly rates for Ms. Cerajeski's counsel are $350 for Ms. Saunders, $350 for Mr. Susman, and $300 for Mr. Hara.  The Court has also concluded that a reasonable amount of time to spend on this litigation is as follows:  156 total hours on *Cerajeski I* for Ms. Saunders and Mr. Susman ($54,600 total); 23.25 total hours on *Cerajeski I* for Mr. Hara ($6,975 total); 77 total hours on *Cerajeski II* for Ms. Saunders and Mr. Susman ($26,950 total); and 39.75

total hours on the second remand for Ms. Saunders and Mr. Susman ($13,912.50 total).  Using these figures, the Court finds the lodestar amount of attorneys' fees for this litigation to be **$102,437.50**.

Although it is not conclusive, "there is a strong presumption that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).  "[T]hat presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.*  Among "other considerations that may lead the district court to adjust the fee upward or downward [is] the important factor of the results obtained." *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010). While the Court cannot forget that this litigation began as a fight over the interest that the State is holding on $10.65 of Mr. Cerajeski's property—an amount that Ms. Cerajeski apparently cares so little about that she has yet to file a claim for it on his behalf—the Court also cannot ignore that as a direct result of *Cerajeski I*, the Indiana legislature amended the UPA so that all individuals can now obtain interest on certain types unclaimed property the State is holding.  As a result, the State has already paid $24,400.71 in interest on claims filed in the first 18 months following the amendment.  [Filing No. 118.]  While that amount is less than the "millions of dollars" Ms. Cerajeski's counsel guessed would result in the decade following the amendment, [Filing No. 85 at 13], it is not nominal and certainly serves a public purpose, as exhibited by the 5,780 property claims paid with interest since the UPA's amendment.  [Filing No. 118.]  For these reasons, the Court finds the lodestar figure to be reasonable and awards Ms. Cerajeski **$102,437.50** in attorneys' fees.

**IV.**
**CONCLUSION**

For the reasons stated herein, the Court **GRANTS IN PART** Ms. Cerajeski's requests for

attorneys' fees, [Filing No. 84; Filing No. 110], and awards her **$102,437.50** in attorneys' fees.  A

Second Amended Final Judgment shall issue accordingly.


Date:  February 29, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Electronic Distribution via CM/ECF:**

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov

Kenneth Lawson Joel
INDIANA ATTORNEY GENERAL
kenneth.joel@atg.in.gov

Arthur T. Susman
LAW OFFICES OF ARTHUR SUSMAN
arthur@susman-law.com

Caryn Nieman Szyper
OFFICE OF THE ATTORNEY GENERAL
caryn.nieman@atg.in.gov

Terry Rose Saunders
THE SAUNDERS LAW FIRM
tsaunders@saunders-lawfirm.com

23